## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **KRISTIN SHELTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-14-575-M** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Kristin Shelton brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. Chief United States District Judge Vicki Miles-LaGrange has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b). Upon careful review of the administrative record (Doc. No. 9, hereinafter "R. __") and the arguments and authorities submitted by the parties, the undersigned recommends that the Commissioner's decision be affirmed.

### PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff filed applications for DIB and SSI on November 13, 2009, seeking benefits on the basis of her bipolar disorder. R. 231-37, 283. Plaintiff initially alleged a disability

onset date of June 8, 2008, but later amended that date to December 31, 2008. R. 36, 57, 233, 236. Following initial denial of her applications, the assigned Administrative Law Judge ("ALJ") held a hearing and, on January 21, 2011, issued an unfavorable decision. R. 33-53, 73-93, 98-105, 110-15. Plaintiff sought and was granted review by the SSA Appeals Council. R. 94-97, 172-74, 333-37. In remanding, the Appeals Council cited error in the ALJ's evaluation of Plaintiff's residual functional capacity ("RFC") pursuant to the applicable regulations and rulings. R. 94-97.

Following submission of additional evidence into the record, a second hearing was held before a different ALJ. R. 54-72, 179-82, 252-77, 338-40, 395-470. Plaintiff, represented by counsel, appeared and testified at the hearing, as did a vocational expert. R. 54-72. The ALJ issued an unfavorable decision on February 12, 2013. R. 15-32.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 8, 2008. R. 20. At step two, the ALJ determined that Plaintiff had the severe impairments of mood disorder, posttraumatic stress disorder, and a history of crack cocaine use. R. 21. At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). R. 21.

The ALJ next assessed Plaintiff's RFC based on all of her impairments. R. 21-25; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The ALJ found:

[T]he claimant has the [RFC] to perform a full range of work at all exertional

levels but with the following non-exertional limitations: She must work in relative isolation with limited contact with the general public and coworkers; she can work around others but not in a cooperative teamwork context; and she can perform one to two step tasks.

R. 21; *see* 20 C.F.R. §§ 404.1567, .1569a, 416.967, .969a. The ALJ determined at step four that Plaintiff was unable to perform her past relevant work as a restaurant worker, which had required that Plaintiff work with other people on a continuous basis. R. 25; *see* 20 C.F.R. §§ 404.1565, .1572, 416.965, .972.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. R. 26. Taking into consideration a vocational expert's testimony regarding the degree of erosion to Plaintiff's unskilled occupational base caused by Plaintiff's nonexertional limitations at all exertional levels, the ALJ concluded that Plaintiff could perform unskilled occupations such as dishwasher and ground maintenance worker (both medium-exertion) and hand packager (light-exertion) and that such occupations offer jobs that exist in significant numbers in the national economy. R. 26; *see* 20 C.F.R. §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii). On that basis, the ALJ held that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from June 8, 2008, through the date of the decision. R. 26; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Plaintiff's request for review of this decision was denied by the Appeals Council on April 25, 2014. R. 1-4. Thus, the February 2013 unfavorable decision stands as the Commissioner's final determination of Plaintiff's DIB and SSI applications. *See* 20

C.F.R. §§ 404.981, 416.1481.  Thereafter, Plaintiff commenced this appeal.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied.  *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted).  The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met.  *Wall*, 561 F.3d at 1052 (internal quotation marks omitted).  While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner.  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff argues that the ALJ's decision is not supported by substantial evidence for various reasons, which are addressed in turn.

*I.*     *The ALJ's Consideration of the Severity of Plaintiff's Mental Conditions*

Plaintiff first argues that the ALJ erred in failing to find that Plaintiff's anxiety disorder constituted a severe impairment independent of the other mental impairments—mood disorder and posttraumatic stress disorder—found by the ALJ. Pl.'s Br. (Doc. No. 11) at 8-9; R. 21.[1] To establish the existence of a severe impairment at step two, Plaintiff "must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). Rather, the claimed impairment "must be of a nature and degree of severity sufficient to justify its consideration as the *cause of failure to obtain any substantial gainful work*." *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003) (internal quotation marks omitted). To qualify as severe, an impairment must "significantly limit[]" the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

Here, medical evidence supports the ALJ's failure to find that Plaintiff has a severe impairment of anxiety disorder. Although Plaintiff's treating physician Nicasio Gutierrez, MD, completed a Psychiatric Review Technique ("PRT") form in which he stated that Plaintiff met the criteria of Listing 12.06 (Anxiety-Related Disorders), Dr. Gutierrez also consistently found that Plaintiff had only a "slightly" anxious or depressed mood or affect. *Compare* R. 419, *with* R. 396, 458-59, 464-68.[2] Examining psychologist Cynthia

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

[2] As discussed in more detail below, the ALJ discounted Dr. Gutierrez's PRT assessment based upon its inconsistencies "with the credible evidence of record including the clinic notes of Dr. Gutierrez." R. 23.

Repanshek, PsyD, found that Plaintiff "demonstrated no deficits of attention or concentration" and had a generally euthymic mood and affect. R. 341. Consulting psychologists Deborah Hartley, PhD, and Kathleen Gerrity, PhD, did not find that Plaintiff's condition should be evaluated under the criteria of Listing 12.06. R. 345, 350, 381. The ALJ discussed these other doctors' opinions in detail in the written decision. R. 22-23, 24-25. The material cited by Plaintiff—scattered record references to "anxiety" and a single generic internet description of anxiety disorder—does not overwhelm the evidence indicating that Plaintiff's anxiety is not a "severe impairment" or otherwise render the ALJ's findings in that regard to be unsupported by sufficient evidence in light of the record as a whole.

Moreover, as noted by the Commissioner, a step-two error does not necessarily require reversal of an unfavorable decision. *See* Def.'s Resp. Br. (Doc. No. 12) at 20. Such an error is harmless if the ALJ continues past step two and, in evaluating the claimant's RFC and making consequent determinations at steps three, four, and five, considers the combined effect of all functional limitations caused by all of the claimant's impairments, whether severe or nonsevere. *Cf. Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error [at step two] became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). Even assuming that the failure to find anxiety disorder to be a severe impairment was not supported by substantial evidence, this shortcoming would only be prejudicial error if the ALJ at steps three, four, and five failed to consider a limitation uniquely attributed to Plaintiff's anxiety—i.e., a limitation associated

with Plaintiff's anxiety disorder and *not* considered in connection with that impairment or Plaintiff's recognized severe impairments of mood disorder and posttraumatic stress disorder.[3]

Plaintiff identifies only one work-related limitation—headaches—that she contends is uniquely associated with her anxiety disorder and was not adequately considered by the ALJ. Pl.'s Br. at 10. Plaintiff does not identify any other work-related limitations of her anxiety disorder that are distinguishable from those associated with her recognized severe impairments of mood disorder and posttraumatic stress disorder and considered by the ALJ in the written decision. *Cf.* R. 419 (Dr. Gutierrez finding that the sole criterion Plaintiff met for Listing 12.06 was "[r]ecurrent and intrusive recollections of a traumatic experience, which are a source of marked distress"). *See generally* R. 24 (ALJ discussing Plaintiff's "primary limitation" of "being around people"), 25 (ALJ discussing Plaintiff's "psychologically based limitations").

Regarding headaches, Plaintiff does not cite any medical opinion evidence or objective medical findings connecting that condition to her anxiety disorder. The record reflects five instances, all between April 2012 and November 2012, in which Plaintiff sought treatment for headaches. *See* R. 437, 453, 458, 460, 468. On two of those

---

[3] Plaintiff nominally suggests that the ALJ also erred by not considering the anxiety disorder as a nonsevere impairment. Pl.'s Br. at 9; *see Wells v. Colvin*, 727 F.3d 1061, 1064-65 (10th Cir. 2013) (explaining that the ALJ must consider all of the claimant's medically determinable impairments, whether severe or not). To obtain judicial review, it is insufficient to simply "suggest dissatisfaction" or merely mention an issue in the context of another matter. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994). Plaintiff's hint of an argument fails to develop a sufficient legal or factual basis for reversal, and the undersigned will not speculate or develop appellate arguments on her behalf. *See id.*; *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003).

occasions, Plaintiff stated that the headaches occurred when she was stressed or extremely emotional. *See* R. 453, 458. On one of those same occasions, Plaintiff also stated that the headaches might be related to blood sugar or blood pressure irregularities. *See* R. 458 (record of April 30, 2012 clinic visit). Plaintiff did not mention headaches during the first administrative hearing in December 2010. R. 33-53. At the second administrative hearing in January 2013, Plaintiff stated that the medical professionals who saw her in May 2012 "weren't sure why I had my headaches." R. 66. This evidence, and Plaintiff's vague and conclusory argument, is insufficient to connect Plaintiff's headaches to anxiety disorder or to establish that headaches affected Plaintiff's ability to work. *See* 20 C.F.R. §§ 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." (citation omitted)), 416.908 (same); *cf. id.* §§ 404.1529(b) ("Your symptoms . . . will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."), 416.929(b) (same); *Murrell*, 43 F.3d at 1389 n.2.

Notably, Plaintiff does not argue that the ALJ erred by failing to consider whether headaches were a medically determinable impairment (severe or nonsevere) by themselves, or that—separately from the question of the severity of Plaintiff's anxiety disorder—the ALJ's RFC assessment was unsound because it did not include limitations based on Plaintiff's headaches. Nor could she successfully make such an argument, given that the time period during which Plaintiff allegedly experienced headaches is insufficient for the headaches to qualify as a medically determinable impairment. The first instance in which

Plaintiff sought treatment for headaches was on April 30, 2012, and the last was on November 30, 2012. R. 458, 468. The last mention of headaches was at the administrative hearing in January 2013. R. 66-67. The record therefore does not reflect that the prescribed one-year duration requirement for a cognizable severe or nonsevere medically determinable impairment was met for this condition. *See* 20 C.F.R. §§ 404.1509 (stating that an impairment "must have lasted . . . for a continuous period of at least 12 months"), 416.909 (same).

For all of these reasons, Plaintiff's assertions of error regarding the ALJ's consideration of anxiety disorder and headaches are unavailing, and reversal is not warranted on any such basis.

## II.    *The ALJ's Consideration of Medical Source Opinions*

Plaintiff next argues that the ALJ failed to properly analyze the medical opinions in the record in reaching his RFC determination. Pl.'s Br. at 10-14.

As an initial matter, although Plaintiff identifies multiple individuals whose opinions were allegedly improperly analyzed, and multiple procedural requirements with which the ALJ allegedly failed to comply, Plaintiff does not specify to the Court which particular aspects of these opinions were improperly rejected or weighed by the RFC determination. In other words, Plaintiff fails to adequately identify how any shortcomings in the ALJ's *procedure* actually prejudiced Plaintiff with respect to the *substance* of the RFC finding or how any such shortcomings rendered the ALJ's RFC determination unsupported by substantial evidence. *See, e.g.*, Pl.'s Br. at 12 (asserting that "these treater's . . . expressed an opinion that [Plaintiff] had a reduced RFC for work" without identifying such opinions),

13 (asserting "[t]hese opinions were uncontradicted" without identifying such opinions), 14 (asserting that "the ALJ used false logic and reasoning in rejecting the treating physician's records and treatment notes" without identifying which records and treatment notes were rejected). This shortcoming alone would be sufficient grounds to deny the alleged claim of error, *see Murrell*, 43 F.3d at 1389 n.2 (noting that plaintiff must "frame and develop an issue" in a manner that is "sufficient to invoke appellate review"); *Threet*, 353 F.3d at 1190 ("[Claimant] does not identify which treating physician she feels was ignored, and we will not speculate on her behalf."). Nevertheless, the undersigned has examined the record in an attempt to deduce the focus of Plaintiff's argument.

A. *Dr. Nicasio Gutierrez and Counselor Rob Rodgers*

Plaintiff takes issue with the ALJ's conclusion that "[t]he Administrative Law Judge has considered the statements of Dr. [Nicasio] Gutierrez and Counselor Rob Rodgers; and their statements regarding the claimant's symptomology are given some weight[.]" Pl.'s Br. at 11; R. 23. According to Plaintiff, this statement fails "to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," as required by the treating physician rule. Pl.'s Br. at 11-12, 13; *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotation marks omitted). Specifically, Plaintiff argues that the ALJ "does not direct this Court to the specific evidence in those opinions which get 'some weight.'" Pl.'s Br. at 11.

1. The ALJ's Discussion of Dr. Gutierrez's and Mr. Rodgers' Opinions

The ALJ's discussion of Dr. Gutierrez's and Mr. Rodgers' opinions was more detailed than indicated by Plaintiff. In quoting the ALJ's conclusion that Dr. Gutierrez's

and Mr. Rodgers' opinions regarding "[Plaintiff's] symptomology" were only entitled to "some weight," R. 23, Plaintiff ignores the ALJ's accompanying discussion of those opinions.

In his decision, the ALJ first considered the evidence and opinions produced by Dr. Gutierrez:

> Medical records from Oklahoma City Indian Clinic covering the period March 11, 2005 through November 22, 2010. The treating physician, Nicasio [Gutierrez], M.D., diagnosed bipolar II disorder, and posttraumatic stress disorder. A note at [R. 393] shows a diagnosis of cannabis abuse.

> Dr. Nicasio [Gutierrez] completed a Psychiatric Review Technique form covering the period March 7, 2005 through March 19, 2012. He concluded that the claimant suffers from depression and anxiety; and that the claimant's impairments meet the level of severity set forth in Sections 12.04 and [12].06 of the listing of impairments found in Appendix 1. He further found that the claimant experiences moderate difficulty in carrying out the activities of daily living; extreme difficulty in maintaining social functioning; extreme difficulty in maintaining concentration, persistence, and pace. Dr. Gutierrez notes that the claimant does not achieve remission of her symptoms since she started outpatient treatment at his clinic. He opined, "She is unable to work at this time due to severe anxiety around people, at times reaching paranoid proportions."

> The [ALJ] notes that the record does not show that claimant has experienced the degree of functional limitation noted by Dr. Gutierrez in [the PRT form]. The clinic notes of Dr. Gutierrez . . . do not support his assessment; and the record as a whole does not support the assessment of Dr. Gutierrez. It is particularly notable that the record does not support a finding that the claimant experienced the degree of functional limitation noted by Dr. Gutierrez throughout the period March 7, 2005, to March 19, 2012. The [ALJ] further notes that the findings of Dr. Gutierrez appeared to be a snapshot of the claimant's condition at a particular time, but there is no indication that the claimant has experienced the degree of functional limitation over the course of time as indicated by Dr. Gutierrez. The [ALJ] finds that the assessment of Dr. Gutierrez is not consistent with the credible evidence of record including the clinic notes of Dr. Gutierrez . . . ; and the [ALJ] therefore assigns little weight to the degree of functional limitation noted by Dr. Gutierrez.

R. 23 (citations omitted); *see* R. 385-94, 414-27.

The ALJ then analyzed the evidence and opinions generated by Mr. Rodgers:

> Rob Ro[d]gers, MA, LPC, wrote a letter dated March 30, 2012, explaining his relationship with the claimant. Dr. Ro[d]gers stated, "Kristin Shelton is receiving individual therapy at the Oklahoma City Indian Clinic." The claimant was assisted in addressing [her] mood swings, depression, anxiety, and posttraumatic stress disorder. He stated that the claimant continues to show poor control over impulses. He stated that the claimant's quick temper and poor anger and impulsivity 'keep her from getting and maintaining a job.'"

R. 23; *see* R. 429; *see also* R. 470 (similar letter from Mr. Rodgers discussing Plaintiff's impulsivity and lack of anger control and stating that "[i]t appears that [Plaintiff] can not maintain relationships or employment due to her mental health condition").

Following these discussions, the ALJ further stated:

> The [ALJ] notes that the determination of whether the claimant is or is not disabled, and unable to engage in any work activity is reserved to the Commissioner. The [ALJ] has considered the statements of Dr. Gutierrez and Counselor Rob Rodgers; and their statements regarding the claimant's symptomology are given some weight; however, their statement regarding the claimant's inability to engage in work activity would be dispositive of this matter directing a determination that the claimant is disabled; and therefore the statements of Dr. Gutierrez and Counselor Rob Rodgers, that the claimant is unable to engage in work activity or maintain a job are given no weight (20 CFR 404.1527 and 416.927).

R. 23-24.

2. Whether the ALJ's Discussion of Dr. Gutierrez's Opinions Met the Regulatory Requirements

As recognized by the ALJ, Dr. Gutierrez was Plaintiff's treating physician. R. 24. Plaintiff received treatment from Dr. Gutierrez from March 2005 through November 2012, and was diagnosed by Dr. Guttierez with bipolar disorder and posttraumatic stress

disorder. R. 24-25, 369-78, 385-94, 396-97, 403-12, 456-69. In March 2012 Dr. Gutierrez completed a PRT form, opining that Plaintiff met the criteria for Listing 12.04 (Affective Disorders), as well as the criteria for Listing 12.06 (Anxiety-Related Disorders). R. 414-27. The ALJ discussed this report and Dr. Gutierrez's treatment notes, finding that the degree-of-function limitations found by Dr. Gutierrez in the PRT report are entitled to "little weight," his statements regarding symptomology are entitled to "some weight," and any statements by Dr. Gutierrez regarding whether Plaintiff can engage in work activity and maintain a job are entitled to no weight. R. 23-24.

Specific SSA regulations govern the consideration of opinions by "acceptable medical sources." *See* 20 C.F.R. §§ 404.1502, .1513(a), 416.902, .913(a). Subject to evaluation by the ALJ, the highest weight generally is given to the opinion of a "treating source," which includes a physician or psychologist who has "provided [the claimant] with medical treatment or evaluation" during a current or past "ongoing treatment relationship" with the claimant. *Id.* §§ 404.1502, .1527(c), 416.902, .927(c); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). The opinion of a "nontreating source"—which includes a physician or psychologist who has examined the claimant, but does not have a current or past "ongoing treatment relationship" with the claimant—must be considered but generally is not given as much weight as that of a treating source. 20 C.F.R. §§ 404.1502, .1527(c), 416.902, .927(c).

When considering the opinion of a claimant's treating physician, the ALJ must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20

C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The opinion of a treating physician is given such weight if it is *both* well supported by medically acceptable clinical or laboratory diagnostic techniques *and* not inconsistent with other substantial evidence in the record. *Watkins*, 350 F.3d at 1300 (applying SSR 96–2p, 1996 WL 374188, at *2 (July 2, 1996)); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). That an opinion is not given controlling weight does not resolve the second, distinct assessment—i.e., what lesser weight should be afforded the opinion and why. *See Watkins*, 350 F.3d at 1300-01. In this second inquiry, the ALJ weighs the relevant medical opinion using a prescribed set of regulatory factors. *Id*.; *see also* 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). The ALJ is obligated to clearly state what weight is being given to the treating physician's opinion and his or her reasoning therefor. *Watkins*, 350 F.3d at 1301 (citing SSR 96-2p, 1996 WL 374188, at *5).

While Plaintiff is correct that the ALJ's evaluation of Dr. Gutierrez's opinions must meet the prescriptions described above for a treating physician, Plaintiff has not shown that the ALJ's decision does not do so. As stated above, Plaintiff's argument is too general to be meaningful. Plaintiff does not adequately explain what aspect(s) of Dr. Gutierrez's opinions she believes is or are entitled to controlling weight, although she concedes that the ALJ properly assigned no weight to statements regarding Plaintiff's inability to work. Pl.'s Br. at 11-13.

One criticism possibly drawn from Plaintiff's argument is that the ALJ did not independently articulate his finding that Dr. Gutierrez's opinions should not be given controlling weight. But such a finding is implicit in the ALJ's second-prong discussion

of the specific weights that he assigned Dr. Gutierrez's opinions. *See Tarpley v. Colvin*, 601 F. App'x 641, 643-44 (10th Cir. 2015) (finding "any imaginable oversight" at step one to be "clearly harmless" when ALJ did not expressly say he was not affording treating physicians' opinions controlling weight, but did explain that they were entitled to no weight because they were inconsistent with the medical evidence, and there was substantial evidence to support that decision). *See generally Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) ("[C]ommon sense, not technical perfection, is our guide."). The ALJ's discussion of the second part of the inquiry—what weight should be given the treating physician's opinions and why—sufficiently explains the ALJ's decision to not assign any of Dr. Gutierrez's opinions controlling weight and the reason why. *See* R. 23-24; *Tarpley*, 601 F. App'x at 643-44; *cf. Kruse v. Astrue*, 436 F. App'x 879, 883 (10th Cir. 2011) (accepting ALJ's evaluation of treating physician's opinion when ALJ did not state specific weight he gave opinion but the assignment of little weight was "readily apparent from the ALJ's rationale").[4]

Regarding the ALJ's assignment of "little weight" to the degree-of-function limitations found by Dr. Gutierrez in the March 2012 PRT report, Plaintiff does not specifically challenge the ALJ's finding or articulate why any opinion regarding a

---

[4] A reviewing court "may employ a harmless-error analysis sua sponte on appeal when . . . the record is not overly long or complex, harmlessness is not fairly debatable, and reversal would result in futile and costly proceedings." *Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013) (citing *Wyoming v. Livingston*, 443 F.3d 1211, 1226 (10th Cir. 2006)). Because substantial evidence supports the ALJ's decision to give Dr. Gutierrez's opinions less than controlling weight, the undersigned finds any first-prong error harmless and remand would be futile.

functional limitation should have been accorded greater weight. Any such argument is waived. *See Murrell*, 43 F.3d at 1389 n.2; *Threet*, 353 F.3d at 1190. Even if it were not, the ALJ found that Dr. Gutierrez's treatment notes were inconsistent with and did not support Dr. Gutierrez's own PRT findings—e.g., moderate and extreme difficulties in functioning and diagnoses of depression and anxiety. R. 23; *see Beasley v. Colvin*, 520 F. App'x 748, 751-52 (10th Cir. 2013) (holding that the ALJ "gave good reasons for the weight he assigned [the treating physician's] opinion," including that the physician's finding of functional limitations was inconsistent with treatment records). Plaintiff does not dispute the ALJ's finding of inconsistency or point to any opinion that should not have been discounted on this basis. Inconsistency with the medical evidence of record is a legitimate reason for discounting a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *see Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("In determining the weight to be given an opinion, the ALJ must consider the consistency between that opinion and the record as a whole."); *Tarpley*, 601 F. App'x at 643-44 (finding no error in ALJ's assignment of no weight to treating physicians' opinions when the limitations suggested conflicted with other evidence in the record); *Kilinski ex rel. Kilinski v. Astrue*, 430 F. App'x 732, 740 (10th Cir. 2011) (finding no error when ALJ gave treating physician's opinion no weight because the medical evidence did not support opinion that claimant suffered debilitating symptoms).

Regarding the ALJ's assignment of "some weight" to statements by Dr. Gutierrez regarding Plaintiff's symptomology, the ALJ's discussion is sufficiently clear to show that the ALJ drew a distinction between Dr. Gutierrez's general statements regarding

symptoms (largely in the treatment notes) and the March 2012 "snapshot" opinions regarding functional limitations in the PRT report. R. 23-24. The treatment notes do not consist solely of medical opinions: the records produced by Dr. Gutierrez contain much administrative information and reporting of subjective patient complaints, which do not "reflect judgment" as to Plaintiff's "symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *See* R. 369-80, 385-94, 396-97, 403-12, 456-69; SSR 06-3p, 2006 WL 2329939, at *2 (Aug. 9, 2006). In any event, Plaintiff does not point to any specific opinion in the treatment notes (or any opinion as to symptomology in the PRT report) that was improperly rejected by the ALJ or otherwise entitled to greater weight.

3. Whether the ALJ's Discussion of Mr. Rodgers' Opinions Met the Regulatory Requirements

Plaintiff's contention that the ALJ did not properly evaluate Mr. Rodgers' opinions under the treating physician rule is unavailing. Although Plaintiff obtained mental health counseling from Mr. Rodgers, MA, LPC, in 2011 and 2012, Mr. Rodgers was not a treating physician. R. 23-24, 383, 430, 470. A counselor such as Mr. Rodgers is not an "acceptable" medical source, and only an acceptable medical source may be considered a "treating" source. There is no analogous rule to the treating physician rule for an "other" medical source such as Mr. Rodgers. 20 C.F.R. §§ 404.1502, .1513(a), 416.902, .913(a); SSR 06-3p, 2006 WL 2329939, at *1-2. Moreover, pursuant to the SSA regulations, a health care provider (such as Mr. Rodgers) who is not an acceptable medical source cannot give a medical opinion. *See* 20 C.F.R. §§ 404.1527(a)(2),

416.927(a)(2); SSR 06-3p, 2006 WL 2329939, at *2. "Medical opinions are statements from . . . '*acceptable medical sources*' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (emphasis added).

"The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case." SSR 06-3p, 2006 WL 2329939, at *5. Here, the decision clearly reflects that the ALJ considered the relevant evidence and information provided by Mr. Rodgers; the ALJ also explained his analysis and stated the weight he assigned. R. 23-24. Nothing more was required. *See id.* at *2, *4-6.

B. *Drs. Asif, Repanshek, Hartley, and Gerrity*

Plaintiff next argues: "[T]he ALJ never identifies what weight he is granting the opinions of treating physician Asif, Consulting Examiner (CE) Repanshek, and State Agency (DDS) doctor's [sic] Hartley and Gerrity." Pl.'s Br. at 12. Plaintiff then provides an extensive description of the treating physician rule, without meaningful explanation of its application to the ALJ's decision.

To be clear, Drs. Asif, Repanshek, Hartley, and Gerrity were all nontreating sources, with the first two doctors (Asif and Repanshek) having examined Plaintiff and the latter two (state agency consultants Hartley and Gerrity) having not.[5] Thus, for all four doctors, their

---

[5] In her brief, Plaintiff describes the first of these doctors—Shahida Asif, MD—as a treating physician. As noted by the ALJ, the record shows that Plaintiff was seen by Dr. Asif only once, for an annual physical exam on December 16, 2008. R. 22, 363-68. It thus has not been demonstrated that there was an "ongoing treatment relationship"

opinions were "not entitled to the sort of deferential treatment accorded to a treating physician's opinion." *See Doyal*, 331 F.3d at 763; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ was required to "evaluate" and "consider" the opinions of examining physicians Drs. Asif and Repanshek, and to the extent any aspect of either opinion was rejected, "to provide specific, legitimate reasons" for that rejection. *See Doyal*, 331 F.3d at 763 (noting that unless an examining physician presents the "only" medical evidence for the relevant time period, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion"); 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ also was required to "consider" and explain his weighing of Drs. Hartley's and Gerrity's opinions. *See* 20 C.F.R. §§ 404.1527(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . , as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us."), 416.927(e)(2)(ii) (same).

The ALJ analyzed and discussed, in detail, the opinions of all four doctors as prescribed by these regulations. R. 22-23, 24-25; *see* 20 C.F.R. §§ 404.1502, .1527(c), (e),

---

between Plaintiff and Dr. Asif, as required for Dr. Asif to be considered a "treating physician" and for the treating physician rule to apply. *See Doyal*, 331 F.3d at 762 ("A physician's opinion is . . . not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as her treating source."); 20 C.F.R. §§ 404.1502 ("Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)."), 416.902 (same).

416.902, .927(c), (e).  Although the ALJ did not state a particular level of weight that he assigned to the doctors' opinions, the ALJ's discussion reflects that he weighed the opinions and found them to be substantially reliable.  R. 22-23, 24-25.[6]  In any event, Plaintiff fails to direct the Court to any specific opinion from these doctors that was improperly rejected, much less to any opinion that was rejected absent adequate explanation.  "[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of [RFC]."  *Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014).  Even assuming that the ALJ's failure to assign precise weight(s) was error, Plaintiff has not shown that error to be prejudicial.

Plaintiff further appears to argue that the ALJ erred in giving the two state agency consultants' opinions greater weight than that given to opinions of unspecified treating physicians.  Pl.'s Br. at 13-14.  Regarding these state agency psychologists, in March 2010 Dr. Hartley reviewed the evidence in Plaintiff's file and completed a PRT assessment.  R. 22, 345-58.  Dr. Hartley also completed a Mental RFC assessment, in which she concluded that Plaintiff "can perform simple and some complex tasks," "cannot relate to the general public," and "can adapt to a work situation."  R. 359-62.  Dr. Hartley's assessment was affirmed by Dr. Gerrity in June 2010.  R. 22, 381.  The ALJ discussed Dr. Hartley's and Dr. Gerrity's opinions and, rather than accepting those opinions entirely, found greater limitations than the opinions alone would indicate.  R. 21, 361.  In

---

[6] Indeed, Plaintiff states in her brief: "In his opinion, the ALJ stated he gave 'great weight' or 'substantial weight' to the opinions of the State Agency physicians."  Pl.'s Br. at 13, 14.  No such statement appears in the ALJ's decision, but that result can reasonably be inferred from the ALJ's discussion.

contrast to the consultants' opinions that Plaintiff could perform some complex tasks, the ALJ in his RFC assessment found that Plaintiff could only perform unskilled work that was further limited to one- or two-step tasks. *See* R. 21, 26. *See generally* SSR 83-10, 1983 WL 31251, at *3, *5 (1983) (explaining that "full range of work" means "all or substantially all" "of the unskilled occupations existing at the exertional level in question"); SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) (noting that complex duties are inconsistent with unskilled work).

Plaintiff asserts that because these psychologists did not personally evaluate or diagnose Plaintiff, their opinions are of "dubious value and suspect reliability." Pl.'s Br. at 13 (emphasis omitted). Absent identification of any aspect of Drs. Hartley's and Gerrity's opinions that should have been rejected, this assertion is just a blanket attack on consulting physicians and psychologists and does not establish any error on the ALJ's part. Plaintiff cites *McGoffin v. Barnhart*, 288 F.3d 1248 (10th Cir. 2002), for the proposition that consulting physicians' opinions are of inherently "suspect reliability," *see* Pl.'s Br. at 13-14, but the Tenth Circuit's statement in *McGoffin* was made under very different circumstances than those found here. In that case, the ALJ had relied upon a nonexamining physician opinion to make the "critical finding" that the claimant's substance dependence was a contributing factor material to her disability determination. *See McGoffin*, 288 F.3d at 1253. Here, the ALJ derived no such critical finding from the relevant opinions and based his RFC determination upon numerous items of evidence in the record. *See* R. 21-25; *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e).

*C. Conclusion*

For all of these reasons, Plaintiff has not shown that the ALJ's treatment of these medical opinions was improper, or that his findings thereon were unsupported by substantial evidence.

*III.        Whether the ALJ Erred in Assessing Plaintiff's Credibility*

The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the individual's statements about [an impairment's] symptom(s) and its functional effects." SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Plaintiff contends that the ALJ erred by failing to closely and affirmatively link his credibility findings regarding Plaintiff's allegations of "the intensity, persistence, and functionally limiting effects of the symptoms" associated with her medically determinable impairments to substantial evidence in the record. Pl.'s Br. at 14-15, 16-18; *see* SSR 96-7p, 1996 WL 374186, at *1. This argument implicates the framework for the proper analysis of a claimant's evidence of pain and other subjective symptoms, as first set forth in *Luna v. Bowen*, 834 F.2d 161, 163-66 (10th Cir. 1987), and more recently summarized in *Wilson v. Astrue*, 602 F.3d 1136, 1144-45 (10th Cir. 2010). *See* R. 24-25.

The ALJ determined that Plaintiff's medically determinable impairments "could reasonably be expected to cause the psychological limitations that the claimant alleges." R. 24. The ALJ further concluded that Plaintiff's statements regarding "the intensity, persistence, and limiting effects of her symptoms are not entirely credible" for multiple, enumerated reasons. R. 24. The ALJ noted that Dr. Asif had found no physical

impairment beyond hip pain, which was relieved by Tylenol. R. 24; *see* R. 22, 363-64; *cf.* R. 47 (Plaintiff testifying that she has no physical problems), 70 (Plaintiff's attorney agreeing that Plaintiff was asserting no exertional limitations). The ALJ also noted that Dr. Repanshek had found "no disordered mentation, abnormalities of thought, or suicidal, or homicidal ideations" when examining Plaintiff. R. 24; *see* R. 22, 341. The ALJ stated that Plaintiff's completion of 1½ years of college was inconsistent with Plaintiff's allegation "that her diminished ability to deal with social interactions is disabling." R. 25; *see* R. 57, 342. Among other factors, the ALJ noted that there was no evidence Plaintiff experienced side effects of medication that significantly diminished her RFC, that the record showed Plaintiff has good working and delayed memory, that the record showed Plaintiff had an intact ability to engage in abstract reasoning, and that Dr. Hartley had found "no more than moderate psychological limitations." R. 25; *see* R. 359-60. The ALJ also noted that there was no indication that Plaintiff's ability to carry out activities of daily living had been eroded to the extent that Plaintiff was unable to engage in any work activity. R. 25; *see* R. 298-305 (Plaintiff reporting that she feeds her dog and occasionally takes it outside, showers and washes her hair daily, prepares light meals, does light housework when her mood permits, shops occasionally for basic needs, spends time with her father and stepmother, and occasionally has dinner with others), 342 (Plaintiff reporting to Dr. Repanshek that she typically talks to her stepmother and plays with her dog).

Read in the context of the entire decision, the ALJ's view toward the credibility of Plaintiff's subjective complaints is not purely conclusory and is sufficiently "linked to

substantial evidence." *See Wilson*, 602 F.3d at 1144-45. Plaintiff criticizes the ALJ's reference to her activities of daily living, but a claimant's ability to engage in daily activities and a lack of prescribed limitations by physicians may support an adverse credibility assessment. *See Rabon v. Astrue*, 464 F. App'x 732, 735 (10th Cir. 2012). Plaintiff does not allege that the ALJ misstated any of the above evidence, and the decision clearly demonstrates that the ALJ considered multiple prescribed factors in assessing Plaintiff's credibility, not just her daily activities—e.g., the treatment received and the "location, duration, frequency, and intensity of the individual's pain or other symptoms." *See* R. 24-25; SSR 96-7p, 1996 WL 374186, at *3. The Court should not "engage in an impermissible reweighing of the evidence" or "substitute [its] judgment for that of the Commissioner." *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

Plaintiff additionally contends that the ALJ erred in his credibility analysis by improperly formulating Plaintiff's RFC prior to evaluating the hearing testimony and the other evidence in the record and by relying on the RFC to conclude that Plaintiff was less than credible. *See* Pl.'s Br. at 15-16. In support, Plaintiff purports to quote a statement by the ALJ to the effect that Plaintiff's statements concerning certain aspects of her symptoms "are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Pl.'s Br. at 15.

The suggested error commonly is referred to as a "*Bjornson* error,"—i.e., that the ALJ's use of boilerplate language indicates that the ALJ improperly relied upon the already formulated RFC in determining the claimant's credibility. *See Bjornson v.*

*Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012); SSR 96-7, 1996 WL 374186. Here, however, no such error has been shown. First, the ALJ's decision finds Plaintiff's statements "not entirely credible"; the ALJ does not condition this finding upon the statements' inconsistency with the RFC, despite Plaintiff's allegation on appeal. *Compare* R. 24, *with* Pl.'s Br. at 15. Second, as with the other portions of the analysis in the decision, the ALJ set out his RFC conclusion in bold type, and the analysis undertaken to reach that conclusion (including his credibility finding) follows in plain type. *See* R. 21-25. The fact that the ALJ's discussion of credibility technically appears after the RFC in the written decision does not demonstrate that the ALJ's RFC conclusion preceded, as a matter of sequential reasoning, his underlying analysis. *See Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 796 (10th Cir. 2013) (rejecting claimant's challenge to substantially identical language). The ALJ's use of boilerplate language would be insufficient to sustain the credibility findings "only in the absence of a more thorough analysis." *See id.* (internal quotation marks omitted). As explained above, however, the ALJ did surround his credibility finding with a thorough analysis, citing specific items of evidence and discussing how this evidence undermined Plaintiff's credibility regarding her limitations. *See* R. 24-25.

Reversal is not warranted on this basis.

IV.     *Whether the ALJ's RFC Determination Otherwise Lacks Sufficient Support*

Finally, Plaintiff asserts that the ALJ's findings regarding Plaintiff's mental limitations are unsupported by substantial evidence. Pl.'s Br. at 18-23. More specifically, Plaintiff argues that the ALJ did not properly apply the "special technique"

or "PRT" prescriptions of 20 C.F.R. §§ 404.1520a and 416.920a in evaluating the severity of Plaintiff's mental impairments and their effect on Plaintiff's ability to work. Pl.'s Br. at 18-23; *see Wells*, 727 F.3d at 1068. The undersigned disagrees.

> The Commissioner follows a special technique to evaluate the severity of mental impairments and their effect on the claimant's ability to work. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). In applying the special technique, the ALJ must first decide whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). . . . .

> The ALJ must next rate the degree of the functional limitation resulting from the claimant's medically determinable mental impairments in four broad functional areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). To complete this step, the ALJ uses a five-point scale, rating the degree of limitation in the first three areas as either none, mild, moderate, marked, or extreme; and the limitation in the fourth area using a numerical scale of either none, one or two, three, or four or more. *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4). The ALJ's degree-of-limitation ratings then inform his conclusions at steps two and three of the five-step analysis. *Id.* §§ 404.1520a(d); 416.920a(d).

*Wells*, 727 F.3d at 1068.[7] If the ALJ finds that the claimant's mental impairments are severe in the course of undertaking this PRT, he or she must determine if the impairments meet or are equivalent in severity to a mental disorder in the Listings. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). If the ALJ finds that the claimant has "a severe impairment(s) that neither meets nor is equivalent in severity to any listing, [the ALJ] will then assess [the claimant's] residual functional capacity." 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).

---

[7] Plaintiff's appellate brief quotes this passage and much more of *Wells* nearly verbatim without attribution. *See* Pl.'s Br. at 19-20; *Wells*, 727 F.3d at 1068-69.

Here, the ALJ determined that Plaintiff had the medically determinable mental impairments of mood disorder and posttraumatic stress disorder, as well as a history of crack cocaine use. R. 21. The ALJ found these to be severe impairments and next determined that Plaintiff's mental impairments caused her "mild restrictions" in activities of daily living and "moderate difficulties" in social functioning and in concentration, persistence, and pace. R. 21. The ALJ found only one or two periods of decompensation, each of extended duration. R. 21. The ALJ thus concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listing and therefore proceeded to assess Plaintiff's RFC. R. 21; 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).

Though not challenging the ALJ's failure to find that Plaintiff's condition met or medically equaled the severity of a Listing, Plaintiff argues that the ALJ violated the special technique prescriptions by failing to set forth a thorough analysis when rating Plaintiff's functional limitations in the four referenced areas. *See* Pl.'s Br. at 20 (Plaintiff arguing, "Unfortunately, despite listing boilerplate medical evidence later in his opinion, we have no actual analysis of each of the areas of functional impairment such that this Court can surmise that the ALJ's findings on the important Part B of the special technique are truly supported findings."). The authority cited by Plaintiff—Social Security Ruling 96-8p—does not support the suggestion that the ALJ was required to provide a separate rationale for each of these degree-of-limitation ratings. *See* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Instead, Social Security Ruling 96-8p states that *the RFC determination*, rather than the §§ 404.1520a and 416.920a rating of

functional limitations, must "include a narrative discussion describing how the evidence supports each conclusion." *Id.* at *7. "[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) . . . . The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment . . . ." *Id.* at *4; *cf. Wells*, 727 F.3d at 1068 ("[A]ny harmful errors would have occurred at step four rather than at step two of the analysis . . . ."). The PRT functional limitations then "inform[]" the ALJ's conclusions at the next steps of the analysis. *Wells*, 727 F.3d at 1068. Plaintiff has not shown that the ALJ's degree-of-limitation ratings, as made for the purpose of 20 C.F.R. §§ 404.1520a(c) and 416.920a(c), were inadequately explained or supported.

The remainder of Plaintiff's argument contains references to the special technique but at its core simply disputes whether substantial evidence supports various conclusions underlying the ALJ's RFC determination.

First, Plaintiff disputes the ALJ's finding that Plaintiff can have "limited contact with the general public" and alleges that Plaintiff was not capable of any public contact. Pl.'s Br. at 21. This is an incomplete description of the ALJ's finding: the ALJ concluded in the RFC that Plaintiff "must work in relative isolation with limited contact with the general public and coworkers; she can work around others but not in a cooperative teamwork context." R. 21. The ALJ's finding is supported by substantial evidence. As noted by the ALJ, Plaintiff herself reported voluntarily making public contact by occasionally going out to dinner with others and occasionally going shopping. R. 22, 302. Dr. Repanshek stated that Plaintiff was appropriately attired at her

examination, with appropriate eye contact and no problems with expressive or receptive language. R. 22, 341. Dr. Repanshek also opined that Plaintiff "provided a reasonable response to a hypothetical social judgment question." R. 343.

In addition, although Dr. Hartley found marked limitations in Plaintiff's ability to interact appropriately with the general public, Dr. Hartley also concluded that Plaintiff could adapt to a work situation. R. 22-23, 360, 361. The ALJ clearly accounted for Plaintiff's difficulties with public interaction by reaching an RFC determination, representing the *most* Plaintiff could do despite her limitations, that expressly included numerous isolating conditions: Plaintiff (i) "must work in relative isolation"; (ii) "with limited contact" with *both* the general public *and* coworkers; (iii) and is unable to work "in a cooperative teamwork context." R. 21; *see* SSR 96-8p, 1996 WL 374184, at *1. And even assuming that Plaintiff generally "cannot relate to the general public" as opined by Dr. Hartley, the Dictionary of Occupational Titles ("DOT") descriptions most closely aligning with the three jobs cited by the ALJ at step five require minimal, if any, interaction with the public. *See* R. 26; DOT 920.587-018, 1991 WL 687916 (4th rev. ed. 1991) (hand packager job does not require significant taking of instructions or helping and does not require talking); DOT 318.867-010, 1991 WL 672755 (kitchen helper ("dishwasher") job does not require significant taking of instructions or helping and does not require talking); *id.* 406.687-010, 1991 WL 673342 (park worker ("ground maintenance worker") job does not require significant taking of instructions or helping and only occasional talking).

Second, Plaintiff disagrees with the ALJ's conclusion that:

> In sum, the claimant suffers from a mood disorder, posttraumatic stress disorder, and a history of crack cocaine use. These impairments cause no more than moderat[e] psychologically based symptoms. The record indicates that the claimant is stabilized on medication. There is no indication of hallucinations, delusions, suicidal ideations, or homicidal ideations. [She] has an adequate memory. [Her] primary limitation is difficulty being around people. [She] has no physical impairment or limitation. The claimant's mental impairments, though limiting, do not support a conclusion that the claimant is unable to engage in *all* work activity.

R. 24. According to Plaintiff, this conclusion was contradicted by Plaintiff's own testimony and a third-party function report completed by her stepmother. Pl.'s Br. at 22-23.

With respect to Plaintiff's testimony, the ALJ properly and reasonably found that Plaintiff's statements regarding the limiting effects of her symptoms "were not entirely credible" and discounted them on that basis. R. 24-25; *see* R. 298-305. As discussed above, the ALJ's analysis of Plaintiff's credibility was proper and supported by substantial evidence.

With respect to the stepmother's report (R. 306-13), Plaintiff merely states, without development, that the ALJ's failure to expressly analyze this function report was error. Pl.'s Br. at 22. Even if this argument had been properly raised to the Court, reversal is not warranted on this basis. In his decision, the ALJ stated that he took "careful consideration of all the evidence" and "of the entire record." R. 19, 20. When an ALJ states that he has considered all the evidence, a reviewing court generally accepts that statement as true. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007). Further, the Tenth Circuit has explained that "[t]here is obviously no requirement that the

ALJ reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. Thus, while an ALJ must *consider* all the evidence, he or she is not required to *discuss* each piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *accord Wall*, 561 F.3d at 1067. More specifically, the Tenth Circuit has found no error when the ALJ did not discuss testimony that was corroborative or cumulative of other evidence that was discussed. *E.g.*, *Wilson*, 602 F.3d at 1148 (finding nothing to indicate that ALJ failed to properly consider therapy records when records were cumulative with respect to undisputed evidence); *Brescia v. Astrue*, 287 F. App'x 626, 630 (10th Cir. 2008) (finding no reversible error where ALJ did not discuss lay witness testimony that was "largely cumulative" of plaintiff's testimony and written statements); *Davis v. Astrue*, 237 F. App'x 339, 342 (10th Cir. 2007) (finding no reversible error where ALJ did not discuss lay witness testimony that was "largely cumulative" of plaintiff's testimony); *Sandoval v. Barnhart*, 209 F. App'x 820, 824 (10th Cir. 2006) (finding no reversible error where ALJ did not mention lay witness testimony that was "cumulative" of plaintiff's testimony); *Miller v. Barnhart*, 194 F. App'x 519, 522 (10th Cir. 2006) (holding that ALJ's failure to mention lay witness testimony did not require remand because ALJ adequately considered evidence related to the testimony); *Standlee v. Barnhart*, 125 F. App'x 938, 941 (10th Cir. 2005) (finding no reversible error where ALJ did not discuss testimony of lay witness that was "largely cumulative" of Plaintiff's testimony). *But see Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) (finding error where ALJ "made no mention" of wife's testimony that was uncontroverted and corroborated the medical evidence).

Here, Plaintiff's stepmother offered her opinions as to Plaintiff's mood changes, problems with dealing with other people, and limited daily activities and social outings. R. 306-13. Plaintiff herself testified and offered statements regarding these same topics, however, and so the stepmother's report was largely cumulative of Plaintiff's first-person testimony. *See* R. 61-62, 64-65, 67-68, 298-305, 341-42. The fact that the ALJ is required to consider such third-party statements does not mandate that the ALJ adopt them in full. *See* SSR 06-3p, 2006 WL 2329939, at *6 ("In considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, . . . it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence."). Further, Plaintiff's stepmother's report does not reflect that Plaintiff's psychological limitations would prevent her from engaging in the very limited work activity allowed by the RFC. *See*, *e.g.*, R. 306 (Plaintiff's stepmother reporting that Plaintiff sometimes can go to grocery store or out to eat, although she "wants to get mad at employees or other people"), 310 (Plaintiff's stepmother reporting that Plaintiff "visits if in decent mood" and occasionally goes to dinner with family).

The undersigned "must affirm an ALJ's decision if substantial evidence—'more than a scintilla, but less than a preponderance'—exists to support it." *Tarpley*, 601 F. App'x at 643 (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Having considered the relevant evidence, the ALJ reasonably determined that Plaintiff could perform a full range of work, subject to multiple and specific nonexertional limitations.

Upon careful examination, the undersigned concludes that the ALJ's RFC assessment is supported by substantial evidence, and reversal is not warranted on this basis.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned recommends that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Any such objections must be filed with the Clerk of this Court by September 7, 2015. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 24th day of August, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE